UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
                                                                 :
CONCORD LINE CO. LTD.,                                           :
                                                                 :
                      Plaintiff,   :   **ORDER GRANTING**
                                                                 :   **MOTION TO VACATE**
    -against-                                                   :
                                                                 :   08 Civ. 5035 (AKH)
                                                                 :
JUST OIL & GRAIN PTE LTD. a/k/a JUST OIL                         :
SINGAPORE f/k/a TOP GRAIN PTE LTD. and                           :
TROPICAL OIL PRODUCTS PTE LTD.,                                  :
                                                                 :
                     Defendants.   :
                                                                 :
---------------------------------------------------------------- x
ALVIN K. HELLERSTEIN, U.S.D.J.:

        Defendant Just Oil & Grain Pte Ltd. moves, pursuant to Admiralty Rule E and Shipping Corp. of India v. Jaldhi, 585 F.3d 58 (2d Cir. 2009), to vacate the order of attachment entered in Plaintiff's favor. For the reasons stated below, the motion is granted.

## I.    BACKGROUND

        The instant action arises out of Defendant's alleged failure to pay "demurrage charges due and owing to Plaintiff under the charter party contract." Complaint ¶¶ 6-7. On June 2, 2008, Plaintiff filed a complaint seeking an attachment of funds, pursuant to Admiralty Rule B, in aid of arbitration and to gain jurisdiction over Defendants. Plaintiff claimed damages, fees, and interest of $53,466.72. Id. ¶ 8. Plaintiff represented that it would, pursuant to the charter party, initiate arbitration in Hong Kong after it initiated the attachment proceedings in this District. Id. ¶¶ 9, 11, 24, 37. I granted Plaintiff's application for a Rule B attachment and, pursuant to the order of attachment, J.P. Morgan Chase attached $53,466.72 in the form of an

1

electronic fund transfer (EFT), originated by Defendant and intended for a third-party payee. The funds were restrained and placed in a suspense account held by the garnishee bank.

Notice of the attachment was duly sent to Defendant and Plaintiff commenced arbitration proceedings in Hong Kong in August 2008.  Plaintiff served its submissions in the arbitration proceedings on August 29, 2008, and Defendant filed its defenses and counterclaims on November 10, 2008.  Plaintiff replied on December 30, 2008.  Plaintiff contends that Defendant did not provide timely notice of whether it intended to introduce any witness statements, but the parties eventually exchanged fact witness statements.  On April 21, 2010, Plaintiff submitted to the arbitrator a letter requesting an order to exchange final submissions.

The parties had fully briefed Defendant's motion to vacate when I requested supplemental briefing to respond to the issues raised in my opinion and order in Americas Bulk Transport Ltd. v. IMT, 08 Civ. 6970 (AKH), Eitzen Bulk A/S v. Ashapura Minechem Ltd., 08 Civ. 8319 (AKH), 2010 U.S. Dist. LEXIS 26277 (S.D.N.Y. Mar. 19, 2010).

## II.   DISCUSSION

### a. The Rules of Attachment

Article III of the Constitution, in extending federal jurisdiction "to all cases of admiralty and maritime jurisdiction," gives district courts the inherent power to grant maritime attachments.  U.S. Const. art. III, § 2.  Admiralty courts have issued maritime attachments "as far back as the authentic history of those tribunals can be traced."  Atkins v. The Disintegrating Co., 85 U.S. (18 Wall.) 272, 303 (1874).  Attachments secure a defendant's appearance and ensure at least partial recovery if the plaintiff succeeds in the action or related arbitration.  Swift & Co. Packers v. Compania Colombiana del Caribe, S.A., 339 U.S. 684, 693 (1950) (citing Manro v. Almeida, 23 U.S. (10 Wheat.) 473, 489 (1825)).  The need for maritime attachments is

particularly strong because it is often "more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. Maritime parties are peripatetic, and their assets often transitory." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 443 (2d Cir. 2006); see In re Louisville Underwriters, 134 U.S. 488, 493 (1890). The Admiralty Rules respond to these issues by providing a broad attachment rule, "under which the attachment is quite easily obtained." Aqua Stoli Shipping Ltd., 460 F.3d at 443.

Attachment procedures are codified in the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. Under Admiralty Rule B, when a defendant cannot be found in the district in which a complaint is filed, a plaintiff may "attach the defendant's . . . intangible personal property . . . in the hands of garnishees." Fed. R. Civ. P. Supp. R. B(1)(A). If intangible property is to be attached, the process server "shall execute the process by leaving with the garnishee or other obligor a copy of the complaint and process requiring the garnishee or other obligor to answer as provided in [the Admiralty Rules]." Id. R. B(1)(d).

Admiralty Rule E codifies procedures to vacate attachments. Rule E(4)(f) requires the court to give defendants a "prompt hearing," and places the burden to justify the attachment on the party that procured it. Plaintiffs must "show why the arrest or attachment should not be vacated." Id.

### b. Shipping Corp. of India and Hawknet

The dispute in Shipping Corp. of India arose from the charter of a ship by an Indian corporation to a Singapore corporation, for shipment of iron ore from India to China. As the ship began to load its cargo, one of its cranes collapsed, killing the crane operator and causing defendant to suspend the charter. Eventually, the ship's equipment passed inspection,

3

the suspension was ended, and the shipment of iron ore was completed.  However, the defendant refused to pay the ship owner's bill, leading to an order for attachment from this court in aid of arbitration in London under the charter agreement.  Levies pursuant to the order for attachment captured $4,689,247 in EFTs, mostly intended for Shipping Corp. of India.  The sum was deposited in the court's registry, subject to the court's further orders.  Shipping Corp. of India v. Jaldhi Overseas Pte. Ltd., 08 Civ. 4328 (JSR) (S.D.N.Y. Oct. 14 2008) (Doc. No. 23).

The Court of Appeals, overruling Winter Storm, expressed concern that its prior holding in Winter Storm, authorizing attachments of EFTs transmitted to and from New York clearing banks, had introduced "uncertainty" in transferring funds internationally, "undermined the efficiency of New York's international funds transfer business," "discourage[d] dollar-denominated transactions," and "damage[d] New York's standing as an international financial center."  Shipping Corp. of India, 585 F.3d at 62.  The court commented that on "further consideration," Winter Storm's justifications were "unpersuasive"; its reliance on precedents dealing with forfeiture of funds being laundered or transferred by terrorists were "misplaced"; and its consequences were "untenable."  Id at 68.

In the absence of any federal maritime law governing attachments of EFTs, the Court of Appeals looked to New York law for guidance.  New York law, the Court of Appeals found, permits attachments and injunctions to restrain "the beneficiary's bank from releasing funds to the beneficiary," and to "levy on the account of the originator in the originator's bank before the funds transfer is initiated," N.Y. U.C.C. §4-A-503, but not of EFTs in the possession of an intermediary bank.  Shipping Corp. of India, 585 F.3d at 70-71.  The court held that EFTs in the temporary possession of an intermediary bank, under New York law, are not the "property of either the originator or the beneficiary," and thus cannot be the object of a Rule B attachment.

4

Id. at 71.  And since the entire concept of *quasi in rem* jurisdiction depends on property of a defendant being found and attached, an EFT that passes through New York for the instant of a set of electronic debits and credits cannot be the basis on which *quasi in rem* jurisdiction can be founded.

Thus, the Court of Appeals overruled Winter Storm, and Shipping Corp. of India became the rule of decision in the Second Circuit.  The Court of Appeals ruled that its new holding applied to all cases "open on direct review," for a "presumption of retroactivity" obtained, overcoming "reliance interest[s]" to the contrary.  Hawknet Ltd. v. Overseas Shipping Agencies, 590 F.3d 87, 91 & n.7 (2d Cir. 2009) (citing Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97 (1993)).

    **c.  The Issue of Ownership**

Under New York law, an EFT fails when it does not make its way to the beneficiary bank for credit to the beneficiary as provided in the payment orders.  See N.Y. U.C.C. § 4-A-104(1), § 4-A-210, § 4-A-406.  Upon such failure, electronic transferring of credits and debits cease, the EFT instruction is converted into a specific fund, and the funds are frozen at the intermediary bank in the form of a suspense account, a temporary account established to hold funds pending clarification of what should be done to them.  See § 4-A-502; John Downes & Jordan Elliot Goodman, Dictionary of Finance and Investment Terms 699 (2d ed. 2006); Joel G. Siegel & Jae K. Shim, Dictionary of Accounting Terms 430 (3d ed. 2000).

The precise contours of "[o]wnership [have] consistently defied easy definition." Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 329 (2d Cir. 2000).  At a minimum, we know that ownership is "relational."  Id. (citing Restatement (First) of Property 1 (1936).  "Ownership" consists of a bundle of rights among jural persons defining their legal relationships

5

with respect to a specific object. See id. Ownership entails "the right to possess, the right to use, the right to manage, the right to the income of the thing, the right to the capital, the right to security, the rights or incidents of transmissibility and absence of term, the prohibition of harmful use, liability to execution, and the incident of residuarity. Burns v. Pa. Dep't of Corr., 544 F.3d 279, 287 (3d Cir. 2008) (quoting A.M. Honore, Ownership, in Oxford Essays in Jurisprudence 112-13 (A.G. Guest, ed. 1961)). Ownership is "nuanced" and relational, not absolute and indivisible. Black's Law Dictionary 1138 (8th ed. 2004).

Funds in a suspense account are, like any other species of property, subject to ownership claims. Here, the dispute is between the originator of the EFT and a putative creditor of the originator. The latter's claim is contingent, depending on the outcome of pending arbitral proceedings. I must now decide what should be done with the funds. That this Court initially lacked jurisdiction to order the funds attached is but one of a number of considerations.

### d. The Court's Equity Powers

As a court in admiralty, I am guided by principles of equity, traceable to the English Court of Chancery. Vaughan v. Atkinson, 369 U.S. 527, 530 (1962) (citing Swift & Co. v. Compania Caribe, 339 U.S. 684, 691-92 (1950)); Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A., 06 Civ. 15299 (PKL), 2007 U.S. Dist. LEXIS 18827, at *5 (S.D.N.Y. Feb. 26, 2007). The distinction between law and equity is rooted in the Constitution, and is not affected by the fusion of law and equity accomplished by the Federal Rules of Civil Procedure. See U.S. Const. art. III § 2; Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 382 n.26 (1949); Lane v. Ludlow, 14 F. Cas. 1081, 1082 & n.1 (2d Cir. 1800) (No. 8,052). Sitting in equity, a court can tailor remedies in accordance with practicality and in the interest of justice. See Freeman v. Pitts, 503 U.S. 467, 487 (1992) ("The essence of a court's equity power lies in its

6

inherent capacity to adjust remedies in a feasible and practical way . . . ."); Hecht Co. v. Bowles, 321 U.S. 321, 329-30 (1944) (recognizing court's authority to "mould each decree to the necessities of the particular case"); Greenwich Marine, Inc. v. S.S. Alexandria, 339 F.2d 901, 905 (2d Cir. 1965) (recognizing court's authority to "adapt an admiralty rule to the equities of a particular situation"); 1 Dan B. Dobbs, Law of Remedies 55-56 (2d ed. 1993).  Fundamentally, "the objective [of admiralty law] is to do substantial justice between the parties."  Esso Standard (Switzerland) v. The Arosa Sun, 184 F. Supp. 124, 127-28 (S.D.N.Y. 1960); Erastus C. Benedict, The American Admiralty: Its Jurisdiction and Practice § 358 (Lawbook Exchange Ltd. 2002) (1850) ("The grand object of doing justice between the parties is superior to technical rules and forms . . . .").

An admiralty court need not turn a blind eye to the facts of the cases before it.  In Eitzen Bulk A/S v. Ashapura Minechem Ltd., I exercised this Court's power to do equity and denied defendant's Rule E motion to vacate.  There, the plaintiff diligently enforced its contractual rights in this court and in the London arbitration, but was confronted with a defendant who was equally diligent in shirking its contractual obligations.  Rather than engage in arbitration as the contract required, or comply with orders from the English High Court, or answer the complaint or enter an appearance to oppose the plaintiff's motion for a default judgment in this Court, the defendant, at every turn, engaged in a course of conduct designed to evade debts owing to the plaintiff and other creditors.

Here, by contrast, Concord has not shown that its interests will be impaired if this Court vacates the attachment.  Though Concord expresses displeasure with the pace of arbitration, it is undisputed that Just Oil has participated in the arbitral proceedings.  Just Oil filed its defenses and counterclaims, exchanged fact witness statements, and acknowledged

7

receipt of the arbitrator's order to exchange final submissions. Unlike the debtor in Eitzen Bulk, there is no indication that Just Oil has defied a single arbitral order, sought competing orders from foreign courts, or left a trail of creditors in its wake. Moreover, Plaintiff has failed to explain its own dilatory conduct. The arbitral proceedings appear to have stalled between December 30, 2008, when Plaintiff filed its reply submission, and January 18, 2010, when the parties exchanged their list of witness statements. Yet Plaintiff fails to show that during that period, it took steps to move the arbitration forward. Plaintiff also fails to explain why it waited until April 21, 2010 to request that the arbitrator issue an order for final submissions. Put another way, Plaintiff fails to show that it has prosecuted its case, either in this Court or in the arbitral proceedings, with diligence, and has failed to show that the attachment is necessary to ensure Defendant's contractual obligation to engage in arbitration. Accordingly, I decline to exercise this Court's equity powers to preserve the status quo.

### III.   CONCLUSION

For the reasons stated, the motion to vacate the attachment is granted.

J.P. Morgan Chase, as garnishee, shall immediately release all funds belonging to Defendant and attached pursuant to this Court's Order for Process of Maritime Attachment and Garnishment. The garnishee shall direct such funds as instructed by Defendant or its counsel.

The Clerk shall mark the motion (Doc. No. 8) terminated and the case closed.

SO ORDERED.

Dated:   June 14, 2010
         New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

8